Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on March 31, 1995, in their Pre-Trial Agreement which was filed on August 16, 1996, and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Helmsman Management Services, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on February 15, 1995, as a result of which the parties entered into the Form 21 Agreement for Compensation. The plaintiff received compensation pursuant to the Form 21 Agreement from February 16, 1995 through July 2, 1995, in the total amount of $4,384.19.
5. The plaintiff's average weekly wage was $336.00, which yields a compensation rate of $224.01 per week.
6. An I.C. Form 24 Application to Suspend or Terminate Benefits was approved on July 21, 1995, allowing the defendant to terminate benefits effective May 11, 1995.
7. An I.C. Form 33 Request for Hearing was filed by the plaintiff on September 11, 1995, and the defendant filed an I.C. Form 33R Response, dated September 14, 1995.
8. The issues for determination are:
 a. Whether the plaintiff is entitled to further compensation after the date of the last payment of compensation by the defendant?
 b. Whether the plaintiff is permanently and totally disabled?
 c. Whether the plaintiff has sustained a substantial change of condition?
 d. Whether the defendant is entitled to any credit for an overpayment of benefits?
9. The parties stipulated medical reports of Dr. James W. Serene, Statesville Orthopedic Clinic; Dr. R. Mark Rodger, Statesville Medical Group; Dr. T. Craig Derian, Durham Clinic; and Mountain View Medical Center, Hayes, N.C., into the record with the Pre-Trial Agreement. In addition, the parties stipulated to the introduction of all Industrial Commission forms and Orders filed in this case, as well as the plaintiff's "Answers to Defendant's Interrogatories and Request to Produce".
 *********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a sixty year old married male, who was employed as a stocker and produce clerk with the defendant-grocery store. The plaintiff lived in North Wilkesboro, North Carolina and worked at defendant's store in Statesville, North Carolina, which was approximately forty-five miles from his home. The plaintiff's duties included pulling pallets loaded with cases of groceries off of a trailer using a pallet jack, placing the pallets in the back storage room, cutting open the cases of product, and placing the product on the shelves for sale to the public. Cases of product varied in weight from twenty to one hundred pounds, depending on the item.
2. On February 15, 1995, the plaintiff sustained an admittedly compensable injury at work when he attempted to unload potatoes from a pallet, and a bag fell over, causing him to twist and experience a burning sensation in his low back.
3. Following the injury, the plaintiff began to receive treatment with Dr. James W. Serene on February 20, 1995, at which time Dr. Serene diagnosed him with a possible herniation at L3-4 or L4-5. An MRI was ordered and the plaintiff was excused from work through February 21, 1995.
4. On February 24, 1995, the plaintiff was provided pain medication and an epidural injection was ordered by Dr. Serene. A CT myelogram was ordered to rule out a disc herniation.
5. On March 17, 1995, Dr. Serene opined that plaintiff could return to light duty work by April 10, 1995, with no lifting greater than ten pounds and with limited stooping and bending; and that by May 1, 1995, plaintiff could work with no restrictions. He further opined March 17, 1995, that the plaintiff had reached maximum medical improvement and retained no permanent partial impairment. The plaintiff complained to Dr. Serene that he felt unable to drive the 45 miles from home to work, and Dr. Serene authorized him to remain out of work for one additional week.
6. After Dr. Serene issued plaintiff's work restrictions, Roger Tinsley, the manager for the defendant's Statesville store, offered the plaintiff a job in March, 1995, staffing the customer service desk. The plaintiff's duties would involve limited stooping and bending, and no lifting more than ten pounds. He would handle answering the telephone, sales of cigarettes, money orders, Western Union, and rain checks, and would be able to sit or stand to do the job. The plaintiff declined to accept this job, which was within his restrictions.
7. On April 5, 1995, the plaintiff returned to Dr. Serene voicing pain complaints. Dr. Serene found plaintiff's complaints to be out of proportion to his physical injury. He also observed a psychological overlay with secondary impotence, headaches, probable depression and nervous tension. Dr. Serene concluded that the plaintiff was not improving as a result of staying out of work. Again, Dr. Serene found the plaintiff to be at maximum medical improvement with no permanent partial impairment. He released the plaintiff to light duty work effective April 10, 1995, and full duty on May 1, 1995.
8. On April 19, 1995, the plaintiff was seen by Dr. R. Mark Rodger for a second opinion, at which time the plaintiff related that he would have to drive 90 miles per day to work. Dr. Rodger found plaintiff had a supratenorial problem with a poor understanding of his pathology with superimposed anxiety and a soft tissue back strain, for which work hardening and a functional capacity evaluation (FCE) were recommended.
9. The plaintiff failed to return to work with the defendant-employer on either April 10, 1995 or May 1, 1995 despite work suitable to his restrictions being made available.
10. After the plaintiff failed to return to work on either April 10 or May 1, 1995, the defendant filed an I.C. Form 24 Application, seeking to terminate benefits, and the same was approved by the Commission on July 21, 1995, to be effective May 11, 1995.
11. On May 11, 1995, the plaintiff returned to Dr. Serene with further complaints of back pain and headaches. Dr. Serene reiterated his opinion from April 3, 1995, and again encouraged the plaintiff to return to light duty work.
12. The plaintiff next saw Dr. Serene on July 10, 1995, at which time the plaintiff complained of back pain and spasms. Dr. Serene advised the plaintiff that he had been released from treatment as of the last visit, that he should have already returned to work, and reconfirmed that the plaintiff did not have a serious back problem.
13. Since being released to return to work by Dr. Serene, the plaintiff has refused to accept the customer service desk job which was offered to him by his employer, and has made no effort to seek work on his own. Despite plaintiff's protestations that he is unable to drive to Statesville to work, he has made no effort to seek work in Wilkes County, where he resides. The plaintiff's complaints of being unable to accept the customer service job due to the driving forty-five miles each way is not accepted as credible in light of the fact that he had worked at the Statesville store for about two years prior to the injury. In addition, no doctor has ever restricted plaintiff's driving as a result of the work-related injury. His contention is further rejected in light of the fact that although he complains that he was unable to drive the forty-five mile trip to the store to work, he was able to travel round-trip to Durham, North Carolina in June of 1996, a distance of approximately two hundred and seventy-six miles.
14. The plaintiff did not seek any medical treatment from July 10, 1995 until June 6, 1996, when he sought treatment on his own from Dr. T. Craig Derian. The plaintiff did not seek authorization from either the defendant or the Commission for this visit. At that time, the plaintiff related that he continued to have pain, and had just started to improve. Straight leg raising was negative bilaterally, except for low back pain. Dr. Derian noted that the plaintiff did have sclerotic periarticular lesion in the sacrum at about the S2 level adjacent to the SI joint on the right, and another lesion on the left ilium adjacent to the SI joint anteriorly. Further, he noted that the plaintiff had vascular calcification. After reviewing all prior diagnostic testing, Dr. Derian formed the impression that the plaintiff had probable internal disc disruption/degenerative disc disease, and possible bony lesions in the sacrum and ilium. The bony findings were a separate condition and not related to the work-related injury, and the degenerative changes were consistent with the plaintiff's age and work history.
15. The plaintiff did not return to Dr. Derian for additional treatment, and Dr. Derian has agreed with Dr. Serene that the plaintiff should attempt to return to work in at least the light duty capacity.
16. Although the plaintiff refused to accept the light duty job which was within his restrictions, he instead chose to accompany his wife in her job selling vacuum cleaners, carrying the cleaners for her to demonstrate. The vacuum cleaners weigh approximately ten pounds.
 *********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff has failed to carry the burden of proof to establish by competent medical evidence that he has sustained a change of condition or is permanently and totally disabled as a result of the back injury on February 15, 1995. N.C. GEN. STAT. §§ 97-29 and 47.
2. Following the filing of an I.C. Form 21 admitting liability for a compensable injury, the burden of proof shifts to the defendant to show that plaintiff is no longer disabled.Dalton v. Anvil Knitwear, 119 N.C. App. 275, 282-283,458 S.E.2d 251, 256-57 (1995), disc. rev. denied and cert.denied, 341 N.C. 647, 462 S.E.2d 507 (1995). Defendant has shown by the greater weight of credible evidence that plaintiff reached maximum medical improvement as of April 5, 1995, and that as of May 1, 1995, plaintiff was able to return to work at wages equal to or higher than plaintiff's pre-injury wages and that plaintiff has refused suitable employment which defendant-employer has offered plaintiff since he reached maximum medical improvement and became capable of earning pre-injury wages. Defendant has further proven that plaintiff sustained no physical impairment or limitations affecting his wage-earning capacity as a result of his compensable injury.
3. The Administrative Decision and Order, filed by the Commission on July 21, 1995, was properly issued and should not be set aside. N.C. GEN. STAT. § 97-32. As such, the defendant is entitled to a credit for the overpayment of compensation from May 11, 1995 through July 2, 1995, in the amount of $1,696.08.
4. The plaintiff is not entitled to permanent partial disability compensation, as he was found to retain no permanent partial impairment to his back as a result of the compensable injury. N.C. GEN. STAT. § 97-31.
5. The plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. § 97-2(19). However, the defendant is not liable for the examination by Dr. Derian, as it was unauthorized. N.C. GEN. STAT. § 97-25.
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim for additional benefits is and must be DENIED.
2. Defendant shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act. However, the defendant shall not be liable for the examination by Dr. Derian.
3. Each side shall pay its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER